In re Lee N. ROMANO and Barbara Jean Romano.

CITIZENS BANK AND TRUST COMPANY, Movant-Appellee,

v.

Lee N. ROMANO and Barbara Jean Romano, Respondents-Appellants.

Nos. 76 B 2212, 76 B 2213.

United States District Court, N. D. Illinois, E. D.

Feb. 15, 1977.

Hubachek, Kelly, Rauch & Kirby, Chicago, Ill., for movant-appellee.

Gesas & Manos, Chicago, Ill., for respondents-appellants.

## MEMORANDUM OPINION

FLAUM, District Judge.

The sole issue before the court in these bankruptcy appeals is whether a beneficiary of an Illinois land trust is the "legal or equitable owner of real property or a chattel real" within the meaning of Chapter XII of the Bankruptcy Act § 406(6), 11 U.S.C. § 806(6). This is a question of first impression and the bankruptcy courts are in conflict over its resolution. *In re Romano*, Nos. 76 B 2212 and 76 B 2213 (Bkrcy.Ct.N. D.Ill. Sept. 28, 1976); *In re Gordon*, No. 76 B 5585 (Bkrcy.Ct.N.D.Ill. Nov. 3, 1976). For the reasons stated *infra*, this court holds that a beneficiary of an Illinois land trust does not come within the meaning of section 406(6), and therefore the appeals are denied and the bankruptcy court's decision affirmed.

The relevant facts are brief and undisputed. Lee and Barbara Romano, appel-

lants herein, are the owners of beneficial interests in Illinois land trusts,[1] and own no other interests in real property.[2] On March 15, 1976, appellants filed petitions [3] seeking arrangements pursuant to Chapter XII of the Bankruptcy Act, 11 U.S.C. §§ 801 *et seq.* Subsequently, on July 29, 1976, Citizens Bank and Trust Co., a creditor of the Romanos and appellee herein, moved to dismiss the Romanos' reorganization petitions on the ground that appellants were not eligible for such relief. The bankruptcy court thereupon dismissed the proceedings and these appeals followed.

Appellee's argument in support of affirming the bankruptcy court's decision is based on the premise that for an individual to be eligible for a Chapter XII real property arrangement, the individual must be a qualified "debtor" within the meaning of section 406(6), 11 U.S.C. § 806(6), of the Bankruptcy Act.[4] Section 406(6) provides:

"debtor" shall mean a person, other than a corporation as defined in this title, who could become bankrupt under section 22 of this title, who files a petition under this chapter and who is *the legal or equitable owner of real property or a chattel real which is security for any debt,* but shall not include a person whose only interest in property proposed to be dealt with by the arrangement is a right to redeem such property from a sale had before the filing of such petition.

11 U.S.C. § 806(6) (emphasis supplied). Moreover, section 461(1), 11 U.S.C. § 861(1), provides that the plan of reorganization submitted by the debtor must "include pro-visions modifying or altering the rights of creditors who *hold debts secured by real property or a chattel real* of a debtor . . . ." *Id.* (emphasis supplied). Thus, appellee contends "that not all individuals and partnerships may become debtors in a Chapter XII case . . .," Collier, On Bankruptcy ¶ 2.07, at 763 (J. Moore, ed. 1976), but that an individual must the legal or equitable owner of real property or chattel real which is used as security for a debt.

As to the Romanos, appellee argues that they are not qualified debtors for Chapter XII purposes because their sole interests in property are beneficial interests in land trusts which, under Illinois law, are considered personal property and not interests in realty. *See, e. g., Chicago Federal Savings & Loan Ass'n v. Cacciatore,* 25 Ill.2d 535, 185 N.E.2d 670 (1962). Therefore, since appellants have no interests under Illinois law in real property, they are not legal or equitable owners· of real property and are not eligible for Chapter XII relief.

While recognizing Illinois' characterization of their interests as personal property, appellants contend that they still are qualified "debtors" within the meaning of section 406(6). Thus, the Romanos argue that the "label" Illinois places on their interests is not dispositive of whether, under a federal standard, they are the legal or equitable owners of real property. Therefore, because they have the right to control and receive the income from the properties in which they hold beneficial interests,[5] appellants argue that in reality they are the owners of the land itself and qualify as

---

1. Respondent has asked this court to declare Lee Romano's appeal moot on the ground that he has transferred all of his beneficial interests into a new trust after this appeal was taken. However, a review of the new trust res and Mr. Romano's prior holdings shows that not all of his beneficial interests were transferred. *See* Schedule B–1—Real Property of Lee Romano, parcels 18 and 19. Therefore, Mr. Romano's appeal is not moot.

2. Appellants' only interests other than beneficial interests are rights to redeem such beneficial interests.

3. An amended petition was filed on March 18, 1976.

4. Section 421 of the Act, 11 U.S.C. § 821, provides: "A *debtor* may file a petition under this chapter . . . ." *Id.* (emphasis supplied).

5. As the parties have agreed, the various trust agreements involved in this case provide that the Romanos have "an interest in the earnings, avails, and proceeds," of the trust res, and that they have no authority to "contract for or in the name of the trustee . . . ."

section 406(6) debtors for purposes of Chapter XII relief.

Initially, this court must agree with appellants that it is federal law that determines eligibility under Chapter XII, and that the states cannot merely place "labels" on property interests to thwart the purposes of the federal statutes. *See Segal v. Rochelle*, 382 U.S. 375, 379–81, 86 S.Ct. 511, 15 L.Ed.2d 428 (1966); *Board of Trade of City of Chicago v. Johnson*, 264 U.S. 1, 10, 44 S.Ct. 232, 68 L.Ed. 533 (1924); *Page v. Edmunds*, 187 U.S. 596, 23 S.Ct. 200, 47 L.Ed. 318 (1903); *Barutha v. Prentice*, 189 F.2d 29, 31 (7th Cir.), *cert. denied*, 342 U.S. 841, 72 S.Ct. 69, 96 L.Ed. 635 (1951); *In re Lake's Laundry, Inc.*, 79 F.2d 326, 328–29 (2d Cir.) (Hand, J., dissenting), *cert. denied*, 296 U.S. 622, 56 S.Ct. 144, 80 L.Ed. 442 (1935); *Fisher v. Cushman*, 103 F. 860 (1st Cir. 1900); *In re Quaker Room*, 90 F.Supp. 758, 760–61 (S.D.Cal.1950); Countryman, *The Use of State Law in Bankruptcy Cases*, 47 N.Y.U.L.Rev. 407, 438 (1972); *but see In re Spanish Language Television of Arizona, Inc.*, 456 F.2d 159 (9th Cir. 1972). Federal standards determine the meaning of terms used in federal statutes. Thus, in *Board of Trade of City of Chicago v. Johnson, supra*, the Supreme Court held that a seat on the Chicago Board of Trade was "property" within the meaning of the Bankruptcy Act for purposes of inclusion in the bankrupt's estate even though state law did not recognize the holder of the seat as having any "property" interest. As the Court stated:

> [W]hen the language of Congress indicates a policy requiring a broader construction of the statute than the state decisions would give it, federal courts cannot be concluded by them.

264 U.S. at 10, 44 S.Ct. at 234.

But, recognizing that federal standards apply, Illinois law is not irrelevant to a consideration of whether the holder of a beneficial interest in an Illinois land trust is the "legal or equitable owner of real property or a chattel real." Illinois law supplies the factual matter concerning the nature of

appellants' interests; it delineates what a beneficial interest is and what rights and obligations an owner of such an interest has. It is upon these facts, defined by state law, that the federal standard is applied. To paraphrase the court in *In re Quaker Room*, 90 F.Supp. 758 (S.D.Cal.1950):

> [I]t is necessary to examine the rights which flow under state law from ownership of [a beneficial interest in a land trust] in determining whether it possesses the characteristics of [real property] within the Bankruptcy Act.

*Id.* at 761. Thus, a two-pronged analysis is required in resolving the issue before the court. First, the court must analyze Illinois law to determine the nature of the ownership interest one has as a beneficiary of an Illinois land trust. And second, the purpose and language of section 406(6) must be analyzed to determine what types of debtors Congress intended to be eligible for Chapter XII reorganization relief.

1. Beneficial Interests in Illinois Land Trusts

Perhaps the most fundamental purpose of an Illinois land trust is the separation of the benefits accruing to real estate (*i. e.*, income and possession rights), and the legal and equitable title to the property. Under the express terms of the trust agreement, the beneficiary's interest is defined as personal property and the trustee holds "the full, complete and exclusive title to the real estate, both legal and equitable." *Chicago Federal Savings & Loan Ass'n v. Cacciatore*, 25 Ill.2d 535, 543, 185 N.E.2d 670, 674 (1962). Ownership of a beneficial interest in a certain piece of real property can be hidden from the public since the existence of the interest need not be recorded in the real property's chain of title. Thus, large interests can be held by individuals in secret with the general public free to rely on the trustee's title in dealing with the property itself. *Id.*

As to the legal aspects of a beneficial interest, except for two exceptions,[6] a

---

6. In *Robinson v. Walker*, 63 Ill.App.2d 204, 211 N.E.2d 488 (1965), the court held that under the

Illinois Dram Shop Act the beneficiaries of the land trust, who controlled and operated the

beneficial interest in an Illinois land trust is treated as personal property separate and distinct from the land itself. Thus, pursuant to the trust agreement and law, upon the death of the beneficiary his interest passes to his executor or administrator as does personal property in Illinois, and not to his heirs at law like all real property. *See Conley v. Petersen,* 25 Ill.2d 271, 184 N.E.2d 888 (1962). Instead of real estate law governing the transfer of beneficial interests, the Uniform Commercial Code applies. *Cf. Levine v. Pascal,* 94 Ill.App.2d 43, 236 N.E.2d 425 (1968). The beneficiary of a land trust need not be notified of a tax deed proceeding on the land, *In re Application of County Treasurer,* 113 Ill.App.2d 50, 251 N.E.2d 757 (1969), and a beneficiary of a land trust is not a necessary party in a foreclosure or condemnation proceeding on the property. *Marshall v. Solomon,* 335 Ill. App. 302, 81 N.E.2d 777 (1948); *Chicago North Shore & Milwaukee R.R. v. Chicago Title & Trust Co.,* 328 Ill. 610, 160 N.E. 226 (1928). Unlike real property, a beneficial interest is not encumbered by homestead or dower rights. *Sterling Savings & Loan Association v. Schultz,* 71 Ill.App.2d 94, 218 N.E.2d 53 (1966); *Stoxen v. Stoxen,* 6 Ill. App.3d 445, 285 N.E.2d 198 (1972). A judgment lien which attaches to a debtor's "real property" does not attach thereby to a debtor's beneficial interests under Illinois law. *Sterling Savings & Loan Association v. Schultz, supra.* Moreover, a beneficiary of an Illinois land trust cannot accept an offer to buy or sell the real estate itself when the offer is made to the trustee, *Schneider v. Pioneer Trust & Savings Bank,* 26 Ill. App.2d 463, 168 N.E.2d 808 (1960), and the trustee is the only party who can sue a tenant for back rent even if the beneficiary has the right to the land's proceeds. *See Jakovljevich v. Alvarez,* 113 Ill.App.2d 302, 252 N.E.2d 60 (1969); *but see Bellows v. Ziv,* 38 Ill.App.2d 342, 187 N.E.2d 265 (1962).

Finally, and most important, unlike the owner of real property, the beneficiary under an Illinois land trust has no right to redeem his interest upon sale by a secured creditor for satisfaction of a debt, *Shefner v. University Nat'l Bank,* 40 Ill.App.3d 978, 353 N.E.2d 126 (1976), and a lien on a beneficial interest (*i. e.,* a pledge of such an interest), is not a lien on the real property itself. *Nelson v. Fogelstrom,* 5 Ill.App.3d 804, 284 N.E.2d 339 (1972); *Quinn v. Pullman Trust & Savings Bank,* 98 Ill.App.2d 402, 240 N.E.2d 791 (1968); *Chicago Title & Trust Co. v. Mercantile Bank,* 300 Ill.App. 329, 20 N.E.2d 992 (1939). Thus, the assignment of a beneficial interest in a land trust does not create a "mortgage" in any sense, and the "foreclosure" of such an interest is governed not by real property principles but rather by traditional contract/personal property standards. *Shefner v. University Nat'l Bank, supra,* 353 N.E.2d at 129.

These cases, and the trust agreements involved in the present appeals, demonstrate that Illinois has not merely placed a "label" on the interests held by appellants but has also changed in a fundamental way the very nature of the interests themselves. While it is true that appellants receive the economic benefits from the real property, in all other respects, particularly in relation to a creditor holding a beneficial interest as security for a debt, personal property law and traditions apply to the beneficial interests.

2. The Meaning and Purpose of Section 406(6) of the Bankruptcy Act.

As stated previously, Illinois law, in defining the parameters of the interest a beneficiary of a land trust holds, is merely the starting point in resolving the issue presently before the court. Having seen that a beneficiary's interest in a land trust is controlled by personal property rules, it

---

establishment engaged in selling liquor were the proper parties in a suit under the Act. *Cf. Wendt v. Myers,* 59 Ill.2d 246, 251, 319 N.E.2d 777, 780 (1974). Also, in *Application of County Treasurer of DuPage County,* 16 Ill.App.3d 385, 306 N.E.2d 743 (1973), the court held that a holder of a beneficial interest in a land trust

had a right to redeem the real property subject to the trust after a foreclosure. In both cases the courts recognized the personal property aspects of a beneficial interest but concluded that the statutes involved included such interests within their reach.

remains for this court to determine the purposes of Chapter XII reorganization relief and the meaning of section 406(6) of the Bankruptcy Act, 11 U.S.C. § 806(6), to see if the Romanos are qualified debtors eligible for such relief.

In order to properly understand the scope of relief offered in a Chapter XII proceeding, it is necessary to place Chapter XII in the context of the entire Bankruptcy Act. As stated by the Seventh Circuit in *In re Dick,* 296 F.2d 912 (7th Cir. 1961), "Chapter 12 has to do with real property arrangements by persons other than corporations." *Id.* at 913. In contradistinction to straight bankruptcy, in which a debtor's liabilities to his creditors are extinguished, Chapter XII reorganization allows a debtor to extend the period of time in which payment of his debts is due.

In conjunction with Chapter XII procedures, which as stated previously is available only to debtors who are the legal or equitable owners of real property or a chattel real used as security for a debt, Chapters X, XI, and XIII also provide reorganization relief to specific classes of debtors. 11 U.S.C. §§ 501 *et seq.,* 701 *et seq.,* 1001 *et seq.* Thus, pursuant to Chapter X, a corporation may reorganize its debts regardless of the nature of its holdings or the nature of its creditors, *i. e.,* secured or unsecured. A private individual may employ Chapter XI procedures to reorganize his debts but only as to those creditors who hold unsecured debts; secured creditors are not affected by a Chapter XI arrangement. And, a wage earner, *i. e.,* one whose income is derived substantially from wages, salary, or commissions, can avail himself of Chapter XIII which allows him to extend payments on all his debts. *See* P. Nadler, The Law of Debtor Relief 653–57 (1972). These provisions, therefore, are specific attempts by Congress to solve problems concerning particular types of creditors and debtors, attempts which purposes are to avoid the harshness of a straight bankruptcy action to all individuals concerned. *Id.* at 654. These reorganization provisions, accordingly, must be viewed as limited exceptions to the general bankruptcy rule that if a debtor is unable to meet his obligations he must deliver up all his assets to his creditors in order to obtain relief.

This characterization of the reorganization chapters of the Bankruptcy Act as restrictive in scope, and in particular Chapter XII, is highlighted and supported by the legislative history, commentaries, and judicial pronouncements concerning eligibility under section 406(6). The *Seventh Circuit,* in *In re Tinkoff,* 156 F.2d 405 (7th Cir. 1946), *cert. denied,* 330 U.S. 820, 67 S.Ct. 675, 91 L.Ed. 1271 (1947), recognized the jurisdictional limitation of section 406(6) and dismissed a Chapter XII petition where the petitioner lied concerning her real property holdings. *See also In re Chalkey,* 34 F.Supp. 969 (E.D.Tenn.1940). Professor Weinstein, one of the principle draftsmen of Chapter XII has stated that the definition of "debtor" in section 406(6), was "specifically fashioned to conform to the *restricted* scope of this chapter." J. Weinstein, The Bankruptcy Law of 1938, at 298 (1938). *See also* Collier, On Bankruptcy ¶ 2.07, at 763–65 (1976) (J. Moore, ed.); P. Nadler, The Law of Debtor Relief § 622, at 683–84 (1972). However, perhaps the most persuasive evidence of the limited nature of Chapter XII relief, restricting it only to legal or equitable owners of *real property,* is found in the legislative history of Chapter XII.

The hearings on H.R. 6439, subsequently amended as H.R. 8046, the Bankruptcy Act of 1938 (Chandler Act), indicate that the purpose of Chapter XII was to alleviate a problem existing in Chicago, Illinois "where it [had] long been a common practice for individuals, as distinguished from corporations, to become principle obligors on bond issues secured by trust deeds." Committee of the House Judiciary Comm., 74th Cong., 2nd Sess., Analysis of H.R. 12889, at 100 (Comm.Print 1936); Hearings on H.R. 6439 Before the Comm. on the Judiciary, 75th Cong., 1st Sess. 40 (1937). Thus, because in areas like Chicago where individuals, rather than corporations held real property, individuals were unable to obtain reorganiza-

tion relief, then available only to corporations. *See* H.R.Rep. No. 1409, 75th Cong., 1st Sess. 51–52 (1937). As stated by Mr. Adams, a principle proponent of Chapter XII, in writing Chapter XII:

> [W]e have given these individuals the same opportunity as they would have had if they had formed a corporation, instead of *taking title* in their own or in their wife's name in the beginning.

Hearings on H.R. 6439, *supra* at 41 (emphasis supplied).[7] Moreover, Mr. Adams, in discussing why a separate reorganization provision was needed for owners of real property again pointed out the narrowness of the need for Chapter XII relief:

> An individual is engaged in business and would normally, under similar conditions come in under [Chapter XI]. He has a question of unsecured creditors; or, at most, if he has secured creditors, in most instances they are securities or chattels in personal property. *The moment you get into real estate, you have again the great complication of our somewhat antiquated but certainly far different real estate law which has grown up, of course, from the Middle Ages.*

*Id.* at 42 (emphasis supplied). And as Mr. Michner, a proponent of Chapter XII stated: "It is the rare case that we are legislating for . . .," where an individual has a large home debt but no unsecured creditors so he cannot use Chapter XI. *Id.* at 46.

Thus, these last statements in particular establish that the use of the terms "legal or equitable owner of real property or a chattel real" in section 406(6) was technical in nature and designed to make eligible for Chapter XII relief those persons whose debts were governed by traditional real property laws. Chapter XII was designed for specific situations, and as such should not be expanded by a court where such an expansion is unwarranted by the statute's language. In the case at bar, the Romanos' property is governed solely by personal property law and as such their interests are insufficient to sustain Chapter XII jurisdiction. The Romanos simply are not the owners of a legal or equitable interest in real property as defined by section 406(6).

### 3. Appellants' Other Arguments.

Appellants raise several other points in support of their position each of which is without merit and does not alter this court's view of the limited nature of Chapter XII eligibility. First, the Romanos call the court's attention to the decisions in *In re Owners of "SW 8" Real Estate v. McQuaid*, 513 F.2d 558 (9th Cir. 1975), and *In re Colonial Realty Investment Co.*, 516 F.2d 154 (1st Cir. 1975), arguing that they stand for the proposition that section 406(6) is to be read broadly and not technically. These cases, are distinguishable, however, since in *In re Colonial Realty Investment Co.*, the debtors clearly owned real property and the issue was which assets would be reorganized, while in *In re Owners of "SW 8" Real Estate*, traditional real estate laws governed the bankrupts unique interest. As stated previously, Illinois has not merely labelled the Romanos interests personalty; the state has made the beneficial interests in land trust personalty and appellants have sought to use this device of property ownership to their advantage.

Next, appellants argue that if section 406(6) is to have any meaning they must be considered eligible for Chapter XII relief since section 406(6) makes eligible "equitable" owners of real property. Thus, the Romanos argue their beneficial interests are equitable interests and that section 406(6), if it is to mean anything, must include such beneficial interests. With this contention the court cannot agree. As stated previously, the trust agreements themselves state that the appellants have no legal *or* equitable interest in the real property. Moreover the use of the term "or equitable" owner of real property has a meaning independent of beneficial interests like those held by appellants. That part of

---

**7.** *See also* Hearing on H.R. 8046 Before a Subcomm. of the Senate Comm. on the Judiciary, 75th Cong., 1st Sess., at 5 (1937) (Representative Chandler).

section 406(6) including equitable owners is to make clear that even in those states which have "title" theories [8] of mortgages, that a debtor will be eligible for Chapter XII relief since real property laws still control. This is to insure uniformity of the bankruptcy laws as required by the Constitution. U.S.Const. Art. I, § 8, cl. 4.[9]

Finally appellants argue that it would be inequitable for a court to read section 406(6) restrictively in light of the great need the appellants have for reorganization relief. Moreover, appellants argue that such a restrictive reading would violate the aforementioned provision of the Constitution mandating uniformity among the several states of the federal bankruptcy laws. However, what the appellants fail to appreciate is that this court is not a legislature and can not expand on the express language and purposes of congressional legislation in order to rectify an alleged unfairness. Congress, in enacting the reorganization provisions of the Bankruptcy Act may have left a small hole into which the Romanos have fallen. While, as stated previously, such relief is afforded wage earners, corporations, owners of real property which is security for a debt, and individuals who have unsecured debt, no provision for reorganization relief is made for individuals who own nothing but personal property and whose debts are all secured by that personalty. Thus, an individual who owns nothing but securities such as common stock, and all his debts are secured by those stocks, would clearly be ineligible for any form of reorganization relief. This would be true even if the corporation which issued the stock owned real property and the individual could control the corporation's ac-

tions.[10] Just like the holder of securities, the Romanos who hold beneficial interests own personal property which is used as security for a debt and can not bring themselves within the purview of reorganization relief. Furthermore, no uniformity problem arises because the holding of one's wealth in beneficial interests is not compelled by the state of Illinois. The Romanos were completely free to choose the manner in which they would invest their wealth. As one Illinois court stated:

There are a myriad of devices and methods available by which property or a thing of value can be owned or controlled. The obvious devices are a basic sole owner, a partnership, a joint venture, a corporation, a trust and variations of the foregoing as to liability, interest, control and authority. The Illinois land trust is another method of controlling property and as with any form of ownership the attendant areas of liability, control and interest vary. Each method has its peculiar advantages and disadvantages and our legal profession is constantly seeking to provide clients with the greatest degree of control and authority and the minimum exposure to any liability, inconvenience and cost.

It is conceivable that beneficiaries of an Illinois land trust would move with alacrity to argue their personal property interest in event of judgments as would their executors and administrators before a probate court.

Thus we see that the respondents in their present posture regarding the real estate cannot be permitted to adopt a legal entity and be blessed with both a

---

8. In a "title" theory state, such as Massachusetts, the mortgagee holds the legal title to the property during the pendency of the mortgage and the mortgagor holds the equitable title only. The situation is different in a "lien" theory state where the mortgagee merely possesses a lien on the mortgaged property and the mortgagor has the title, legal and equitable, to the property. A. Casner & W. Leach, Cases & Text on Property 738–39 (1969).

9. Appellants argue that a beneficial interest in a land trust is a chattel real within the meaning

of section 406(6). This contention also fails since the term chattel real is highly technical and involves primarily leaseholds, i. e., estates for terms of years. See P. Nadler, The Law of Debtor Relief § 622, at 683–84 (1972). A beneficial interest is not a chattel real but strictly personal property and appellants have cited no relevant authorities to the contrary.

10. See the factual situation in *In re Collins*, 75 F.2d 62 (8th Cir. 1934).

sword and a shield depending upon the varying facts and circumstances.

*In re Application of County Treasurer,* 113 Ill.App.2d 50, 57, 251 N.E.2d 757, 760–61 (1969). *See also Schneider v. Pioneer Trust & Savings Bank,* 26 Ill.App.2d 463, 466, 168 N.E.2d 808, 809 (1960).

While this court recognizes the laudatory purposes to be attained by Chapter XII, section 406(6) can not be interpreted so as to change its meaning. Accordingly, because the Romanos are not the legal or equitable owners of real property or a chattel real within the meaning of section 406(6) of the Bankruptcy Act, the bankruptcy court was correct in dismissing their Chapter XII petitions. The decision of the bankruptcy court is therefore

AFFIRMED.

